UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Pure Romance Parties, Inc.,

    Plaintiff,

    v.                                    Case No. 1:09cv293

Cheri Patterson, *et al.*,           Judge Michael R. Barrett

    Defendant.

## OPINION & ORDER

This matter is before the Court upon Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 3.) Defendants have filed a Response in Opposition (Doc. 11) and Plaintiff has filed a Reply (Doc. 22). The Court held a hearing on Plaintiff's Motion on June 8, 2009. (Doc. 27.)

**I.**     **BACKGROUND**

Plaintiff Pure Romance seeks to enjoin Defendants Cheri Patterson, Tami L. Nelson, Leslie Wredt, and Sarah Apigium.[1] Pure Romance is engaged primarily in the business of contracting with consultants throughout the United States to organize in-home parties where customers can purchase accessories for relationship enhancement. (Doc. 3, Chris Cicchineli Aff. ¶ 2.) Pure Romance claims Defendants are in breach of the written consultant agreements ("Consultant Agreements") they signed when they became consultants with Pure Romance. These agreements contain a noncompetition provision, which provides:

---

[1]Plaintiff has withdrawn its motion as it relates to Erika Patterson, Megan O'Connor, and Jamie Bexten.

> Competition restriction. The Contractor will not, during the relationship provided by this Agreement and for a period of one year from the termination of the relationship, within any County in which the Contractor has at any time displayed, promoted, or sold PURE ROMANCE merchandise (1) engage in a business similar to the Company's business, including owning, operating, organizing, managing, directly, supervising, consulting with, or otherwise working for or being employed by such a business; (2) solicit any Contractor of the Company to become a sales representative, dealer, Consultant, or contractor for the Contractor for a business similar to the Company's business, or (3) solicit any customers of the PURE ROMANCE network of contractors or any person who is or was a customer of the Contractor during the Contractor's relationship with the Company to purchase merchandise similar to the Company's merchandise from the Contractor….

(Doc. 2, Ex. A)

Pure Romance claims that Defendants are violating the noncompetition provision by working as consultants with Brown Bag Party, which is also in the business of contracting with consultants throughout the United States to organize in-home parties where customers can purchase accessories for relationship enhancement. (Cicchinelli Aff. ¶ 5) Pure Romance also claims that Defendants also soliciting customers of Pure Romance, contrary to the restriction contained in the noncompetition provision. Pure Romance has submitted evidence that Patterson and Wredt have set up websites showing themselves as consultants for Brown Bag Party. (Doc. 22, Exs. A, B) Pure Romance has also submitted Defendants' responses to Pure Romance's requests for admissions, in which Defendants largely admit that they have violated the noncompetition provision.

## II. ANALYSIS

Under Federal Rule of Civil Procedure 65, injunctive relief is an extraordinary remedy whose purpose is to preserve the *status quo*. In when determining whether to grant or deny a temporary restraining order or a preliminary injunction, this Court must consider four factors: (1) whether the movant has a strong likelihood of success on the

merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Chabad of S. Oh. & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004), *quoting Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318, 322 (6th Cir. 1997); *Michigan State AFL-CIO v.Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997). The foregoing factors are not prerequisites, but rather are factors which the Court should balance. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002).

### A. **Likelihood of success on the merits**

Defendants argue that Pure Romance has failed to show a likelihood of success on the merits because the noncompetition provision is unenforceable.

The parties agree that Ohio law applies to this dispute. The parties have also assumed that the cases in which an employer-employee relationship exists are applicable to the legal relationship between Pure Romance and Defendants, which is an independent contractor relationship. The Court, unable to find any caselaw to the contrary, finds that such caselaw is applicable.

In Ohio, reasonable noncompetition agreements are enforced, and unreasonable noncompetition agreements are enforced to the extent necessary to protect an employer's legitimate interest. *Procter & Gamble Co. v. Stoneham*, 747 N.E.2d 268, 275 (Ohio Ct.

App. 2000). The Ohio Supreme Court has held that "[a] covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 544 (Ohio 1975). In determining whether a noncompetition agreement is reasonable, courts are to consider the following factors:

> whether the covenant imposes temporal and spatial limitations, whether the employee had contact with customers, whether the employee possesses confidential information or trade secrets, whether the covenant bars only unfair competition, whether the covenant stifles the employee's inherent skill and experience, whether the benefit to the employer is disproportionate to the employee's detriment, whether the covenant destroys the employee's sole means of support, whether the employee's talent was developed during the employment, and whether the forbidden employment is merely incidental to the main employment.

*Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992), *citing Raimonde*, 325 N.E.2d. at 547. If a noncompetition agreement is unreasonable, courts are empowered to modify the terms to create a reasonable covenant between the parties. *Rogers v. Runfola & Assoc., Inc.*, 565 N.E.2d 540, 544 (Ohio 1991).

Pure Romance argues that the noncompetition clause is reasonable based on the *Raimonde* factors. Pure Romance argues that the time and geographic limitations are reasonable because they are consistent with the noncompete agreements enforced by Ohio courts. While Ohio courts have upheld agreements with time limits longer than one year, *e.g.*, *Raimonde*, 325 N.E.2d at 548 (upholding three-year limitation), there must be a "reasonable relationship" between the period of prohibition and the legitimate interests of the employer. *Life Line Screening of Am., Ltd. v. Calger*, 881 N.E.2d 932, 943 (Ohio Com.Pl. 2006), *quoting S & S, Inc. v. Kuret*, 1993 WL 158238, *2 (Ohio Ct. App. May 13,

1993) (unpublished). Defendants, however, do not dispute that the one-year period is unreasonable. Instead, Defendants argue that Pure Romance has no way of identifying the customers of its consultants. The Court notes that this information could be provided by way of discovery, and is not a basis for finding the noncompetition clause unreasonable.

However, the Court does find that the geographic limitation in the noncompetition provision to be overly broad. While it may be reasonable to prohibit the solicitation of identifiable consultants or customers, Pure Romance has failed to provide any basis for a prohibition covering an entire county in which Defendants have "displayed, promoted, or sold" Pure Romance merchandise. Defendants were not assigned a specific sales territory, and the record shows that the geographic location of the customers of different consultants often overlapped. To enforce the noncompetition provision as written would mean that the sale of one product to one lone customer would prohibit Defendants from soliciting any person in that entire county. The Court finds that such a prohibition is unreasonable.

In addressing the *Raimonde* factors, Pure Romance points out that Defendants were the primary contacts for customers. Defendants counter that as consultants, they served as independent contractors, and therefore their customers belong to them. Defendants argue that Pure Romance's attempt to enjoin them from contacting their customers is an attempt to eliminate ordinary competition. In their affidavits, Defendants state that virtually all of their customers were cultivated through personal relationships, contacts with friends and family, cold calls, and referrals from existing customers. (Doc. 12.) In response, Pure Romance has submitted evidence that in January and February of 2009, Patterson received from Pure Romance a list of women who had an interest in

becoming Pure Romance consultants. (Cicchinelli Aff. ¶ 9; Doc. 22, Ex. D.) Pure Romance has also submitted evidence that in February and March of 2009, Wredt received from Pure Romance a list of women who wanted to host a Pure Romance party. (Cicchinelli Aff. ¶ 10; Doc. 22, Ex. E.) Patterson and Wredt also received "corporate leads," which were generated from the Pure Romance website, calls made to the Pure Romance corporate offices, and information obtained by the corporate office from various cities across the country. (Id. ¶ 7.)

The Court finds that this situation is distinguishable from those situations where an employee brings established customers to a business, or customers come to an employee because the employee possesses a particular skill or provides a personal service. *See, e.g., Merrill Lynch v. E.F. Hutton & Co.*, 403 F.Supp. 336, 341 (E.D. Mich. 1975) (denying injunctive relief where record showed customers identified with individual brokers more than with brokerage firm). The record indicates that Defendants developed their customers after becoming consultants with Pure Romance.[2] While Defendants may have developed the majority of their customers as a result of their own efforts or had previous, personal relationships with their customers, these customers would not have been customers but for Defendants' role as a consultant with Pure Romance. Defendants were acting as salespeople, and the products they were selling, while of a personal and private nature, were that of Pure Romance. It is this business relationship between Defendants and their customers which Pure Romance has a right to protect. *See UZ Engineered Products Co.*

---

[2]Patterson states in her declaration that she previously worked for other multi-level marketing companies. (Doc. 12, Patterson Decl. ¶ 2) However, Patterson did not sell personal relationship enhancement products when she worked for these companies.

*v. Midwest Motor Supply Co., Inc.*, 770 N.E.2d 1068, 1080 (Ohio Ct. App. 2001) (holding that "an employer has a legitimate interest in preventing a former employee from using the skill, experience, training, and confidential information the former employee has acquired during the employee's tenure with his employer in a manner advantageous to a competitor in attracting business, regardless of whether it was an already established customer of the former employer.").

However, the Court finds that the noncompetition agreement is overbroad in that it prohibits Defendants from soliciting "any customers of the PURE ROMANCE network of contractors" in addition to "any person who is or was a customer of the Contractor during the Contractor's relationship with the Company." As a practical matter, it would require former consultants to ask each and every potential customer if they have ever purchased a Pure Romance product before soliciting that person. Pure Romance has not provided any basis to extend the prohibition on soliciting customers this far. Under *Raimonde*, the Court finds that the benefit of such a prohibition to Pure Romance is disproportionate to the detriment of Defendants. Therefore, the Court finds that the prohibition on solicitation of "any customers" is unreasonable.

The Court also finds unreasonable the prohibition on "engaging in a business similar to the Company's business." This provision merely seeks to eliminate ordinary competition. Pure Romance has failed to establish that a complete ban on selling similar products for a similar company is necessary to prevent unfair competition.

However, Ohio courts have recognized that an employer has a protectable interest in enforcing its non-compete agreements among remaining employees. *Life Line Screening of Am., Ltd. v. Calger*, 881 N.E.2d 932, 941 (Ohio Com.Pl. 2006), *citing H.L.S.*

*Bonding Co. v. Fox*, 2004 WL 232145, *3 (Ohio Ct. App. Feb. 3, 2004) (unpublished). Accordingly, the Court finds reasonable the prohibition against solicitation of "any Contractor of the Company to become a sales representative, dealer, Consultant, or contractor for the Contractor for a business similar to the Company's business."

Pure Romance argues that Defendants had access to Pure Romance's proprietary information, which is a factor to be considered under *Raimonde*. Pure Romance points out that as part of their Consultant Agreements, Defendants agreed that Pure Romance would publish materials which contain trade secrets. (Doc. 2, Exs. A, B, C.) For example, Defendants received a Sales Contest Book which outlined money making and sales opportunities for consultants. (Doc. 22-4, Chris Cicchinelli Aff. ¶ 4.) Defendants were also given a password for access to an online program called "Pure Romance University," which provides specialized marketing and sales tips, sales profit information, and information on how to recruit new consultants. (Id. ¶ 5.) Defendants were also mailed quarterly copies of a magazine published by Pure Romance which provided the same kind of information to consultants. (Id. ¶ 6.)

Defendants respond that these materials were not kept confidential, and were widely available from various sources on the Internet. The Court notes that the publication of these materials was not by Pure Romance. The record shows that Pure Romance required each consultant to acknowledge that they were to receive materials which contained trade secrets, and consultants agreed to keep that information confidential. (Doc. 2, Ex. A ¶.)

Defendants Patterson and Apigian maintain that selling relationship enhancement products is the sole source of income for them. (Doc. 12, Patterson Decl. ¶15; O'Connor

Decl. ¶ 5.) The Court finds that enforcement of the noncompetion agreement, to the extent that this Court has found it to be reasonable, does not destroy Patterson and Apigian's sole means of support. Patterson and Apigian would still be permitted to sell products for Brown Bag to new customers, and after a period of one year, Patterson and Apigian would be permitted to sell products to any customer who was a customer during their relationship with Pure Romance.

Finally, the Court finds that enforcement of the noncompetition provision would not be injurious to the public. Ohio courts have explained that where enforcement of a noncompete clause would result in an employer's having a near monopoly for its products or services in a given market, enforcement may be denied on the grounds that it would harm the public. *Brentlinger Enterprises v. Curran*, 752 N.E.2d 994, 1004-1005 (Ohio Ct. App. 2001). There is no indication in the record that enforcement of the noncompetition provisions in Defendants' Consulting Agreements would create a monopoly, as products which are similar to Pure Romance's products are available from other sources.

Based on the foregoing, the Court concludes that Pure Romance shown a likelihood of success on the merits to the extent that the Court has modified the noncompetion provision and found it to be reasonable and therefore enforceable. Therefore, this factor weighs in favor of granting an injunction.

### B. Irreparable injury

It is well-settled that "a plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer*, 973 F.2d at 511. Pure Romance claims that it will suffer irreparable injury to its business and business relationships with customers and consultants. Pure Romance also claims that it will be unable to unable to distinguish the

business obtained by Defendants while working for Brown Bag Party, and sales obtained through Defendants' violation of the noncompetition provision.

The Court finds that the latter claim no longer has merit because the Court has modified the noncompetition agreement so that Pure Romance could identify sales which violated the noncompetition agreement by tracking sales to people who were customers of Defendants during the term of their contractual relationship with Pure Romance.

As to the harm to Pure Romance's business, the loss of customer goodwill often amounts to irreparable harm because the damages are difficult to compute. *Brakefire, Inc. v. Overbeck*, 878 N.E.2d 84, 106 (Ohio Ct. Com. Pl. 2007), *citing Basicomputer*, 973 F.2d at 512. While Pure Romance could certainly calculate the lost sales as a result of any breach of the noncompetition agreement, Pure Romance would not be able to calculate the loss of customer goodwill.

In addition, Pure Romance has presented evidence that Defendants had access to Pure Romance's trade secrets. Ohio courts have held that "in an action to enforce a noncompete agreement, an actual threat of harm exists when an employee possesses knowledge of an employer's trade secrets and begins working in a position that causes him to directly compete with the former employer or the product line that the employee formerly supported." *Convergys Corp. v. Tackman*, 864 N.E.2d 145, 146 (Ohio Ct. App. 2006), *citing Procter & Gamble Co. v. Stoneham*, 747 N.E.2d 268, 278 (Ohio Ct. App. 2000). Therefore, the Court concludes that Pure Romance has adequately demonstrated that it will suffer irreparable injury without an injunction, and this factor weighs in favor of granting an injunction.

## C. Harm to others

In assessing a motion for an injunction, this Court must consider whether the injunction would harm the party enjoined or others, and if so, whether such harm outweighs any irreparable harm established by the party seeking the injunction. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). The Court finds that harm to Defendants that would result from the enforcement of the noncompetition agreement, as modified by the Court, does not outweigh the irreparable harm to Pure Romance. Defendants are still permitted to sell products similar to those of Pure Romance to new customers, and would be permitted to sell these products to anyone after a period of one year. Moreover, Defendants are permitted to sell any products outside those which are not similar that of Pure Romance.

The Court also finds that the harm to others would not outweigh the harm to Pure Romance. As stated earlier, products similar to that of Pure Romance are available from other sources, and Pure Romance has other consultants who are able to sell their products. Therefore, the Court finds that this factor weighs in favor of granting an injunction.

## D. Public interest

Under Ohio law, "[p]reserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest." *UZ Engineered Products Co.*, 770 N.E.2d at 1081. Accordingly, this favor weighs in favor of granting an injunction.

## E. Bond

The requirement of a bond pursuant to Federal Rule of Civil Procedure 65(c) is

discretionary. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) ("While we recognize that the language of Rule 65(c) appears to be mandatory, and that many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security.").

Defendants state that an injunction would severely damage, and possibly destroy, the businesses that they have built on their own. However, Defendants have not provided the Court with any calculation of an amount of security which would protect their interests. As such, the Court finds that further briefing on this issue is necessary.

### F. Attorney fees

In its Reply, Pure Romance claims that it is entitled to attorney fees and costs under the terms of the Consulting Agreements. The Court finds that such a claim is premature and therefore any award of fees and costs is DENIED.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 3.) is hereby **GRANTED**;

2. Defendants shall be enjoined for the remainder of the one-year period following the termination of their relationship with Pure Romance from:

    a. soliciting any contractor of Pure Romance to become a sales representative, dealer, Consultant, or contractor for Defendants for a business similar to Pure Romance's business; or

    b. soliciting any person who is or was a customer of Defendants during their relationship with Pure Romance to purchase merchandise similar to Pure Romance's merchandise from Defendants; and

3. Within ten (10) days of the entry of this Order, Defendants shall file a memorandum to support their position that a bond is required pursuant to

Federal Rule of Civil Procedure 65(c). Pure Romance shall file any response within five (5) days of the entry of the memorandum; and Defendants shall file any reply within two (2) days of the entry of Plaintiffs' Response.

**IT IS SO ORDERED.**

                                       */s/ Michael R. Barrett*
                                   United States District Judge